**SCHLEIER LAW OFFICES, P.C.**
4600 East Shea Blvd., Suite 208
Phoenix, Arizona 85028
Telephone:  (602) 277-0157
Facsimile:  (602) 654-3790

TOD F. SCHLEIER, ESQ. #004612
Tod@SchleierLaw.com
BRADLEY H. SCHLEIER, ESQ. #011696
Brad@SchleierLaw.com

*Attorneys for Plaintiff Kathleen Ganley*

IN THE UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kathleen Ganley, a single woman, ) | No. |
| Plaintiff ) | |
| ) | |
| v. ) | |
| ) | **COMPLAINT** |
| Arizona Board of Regents, a public ) entity and governing board for Northern ) Arizona University; ) | **(JURY TRIAL DEMANDED)** |
| ) | |
| Defendants. ) | |
| ) | |
| ) | |
| ) | |

Plaintiff Kathleen Ganley, by and through counsel, for her Complaint against Defendant alleges;

**JURISDICTION AND VENUE**

1.      This is an action against Defendant Arizona Board of Regents ["ABOR"] to remedy discrimination and retaliation on the basis of disability/impairment in violation of Section 504 of the Rehabilitation Act of 1973. 29 U.S.C. § 701 *et seq*. ("Rehabilitation Act") to correct unlawful employment practices on the basis of disability to vindicate Plaintiff's rights, and to make her whole.

2.     Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 as this matter involves a federal question under the Rehabilitation Act.

3.     The unlawful employment practices described herein were committed within Maricopa County, State of Arizona.  Accordingly, venue in this Court is proper pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

4.     Plaintiff Kathleen Ganley (hereinafter "Plaintiff" or "Plaintiff Ganley") is a single woman and at all times relevant herein resided in Maricopa County, State of Arizona.

5.     Defendant ABOR is a public entity and the governing entity of Northern Arizona University ["NAU"].

6.     Defendant ABOR is an employer subject to the Rehabilitation Act.

**BACKGROUND**

7.     Plaintiff began working for NAU in 2006 as an Assistant Professor of Physical Therapy, College of Health and Human Services.

8.     Throughout her employment with NAU, Plaintiff consistently earned the highest annual review ranking, "highly meritorious."

9.     Plaintiff was promoted to Associate Professor in 2011 and to full Professor in 2018.

10.    In 2017, Plaintiff began having movement impairments that were quite observable. From that time forward, Dr. Patricia Pohl, the Department Chair and my client's supervisor at the time, began treating Plaintiff Ganley differently compared to Plaintiff Ganley's non-disabled peers.

11.    From 2017 to the spring of 2020, Plaintiff Ganley was subjected to ongoing discrimination, harassment, and retaliation due to her disability, which ultimately led to her discriminatory/retaliatory demotion in 2020 from her Associate Dean position, which had

- 2 -

negative effects on her health and finances (i.e. reductions in her contract duration and compensation.

12.    With regard to specific acts leading up to the events of 2020, Plaintiff Ganley experienced the following:

13.    In early 2018, Plaintiff Ganley first notified Human Resources/Equity and Access Office ("EAO") of her disability and discussed a very simple accommodation for her disability that she simply be able to close her door during work hours when was distracted by the staff and faculty's noise in neighboring offices during excessively noisy times which would assist with her disability.

14.    Later, Dr. Pohl told Plaintiff Ganley that her door needed to be open unless she was on a call or in a meeting. Dr. Pohl refused the accommodation request and shared this with EAO's Assistant Vice President, Priscilla Mills, who then followed-up with Plaintiff Ganley. She told Plaintiff Ganley that if she formally requested an accommodation to work with her door closed, it would likely be denied.

15.    Plaintiff Ganley's colleague, Dr. Meghan Warren and Plaintiff Ganley were considered for full Professor in 2018. Because they met the required criteria, both Dr. Warren and Plaintiff Ganley decided not to request letters of recommendation from reviewers external to the university, which are described as "optional" in the Faculty Handbook. With no explanation, Dr. Pohl required external letters of recommendation in support for Plaintiff Ganley's application but did not require the same from Dr. Warren even though there was no evidence that Plaintiff Ganley's application would have been viewed unfavorably without the letters.

16.    During 2018 Plaintiff Ganley applied for the Associate Dean of Health and Human Services position, to remove herself from Dr. Pohl's direct supervision. Dr. Pohl was a member of the search committee and fought to keep Plaintiff Ganley from getting the position.  Even though Plaintiff Ganley ultimately earned the Associate Dean position, Dr.

1    Pohl expressed her disapproval of Plaintiff Ganley to her new supervisor and the other

2    department chairs.

3         17.    From 2018 to 2020 Plaintiff Ganley learned that Dr. Pohl shared false

4    accusations about Plaintiff Ganley, shared information about Plaintiff Ganley's disability

5    and medical condition, and discredited Plaintiff Ganley's reputation to her peers and Dean

6    Lynda Ransdell, who Plaintiff Ganley reported to:

7         18.    In February 2020, Dr. Pohl reported to Dean Lynda Ransdell and alleged

8    Plaintiff Ganley's improperly completed a conflict-of-interest form used to report outside

9    employment to the University. Dr. Pohl had approved the same documentation from

10   Plaintiff Ganley in each of the previous years she served as Plaintiff Ganley's primary

11   supervisor. Not only was the accusation not true, as evidenced by a comparison of Plaintiff

12   Ganley's report and federal income tax documents, it represents an issue that Dr. Pohl did

13   not challenge with other employees who had far more extensive employment and income

14   outside of the University. However, other faculty supervised by Dr. Pohl were not

15   scrutinized and criticized for admittedly violating the conflict rules.

16        19.    Dr. Pohl also reported that Plaintiff Ganley was away from campus

17   excessively, without Dr. Pohl knowing the activities that drew Plaintiff Ganley away from

18   campus or times that Plaintiff Ganley had requested and received time off from her

19   supervisor. Other faculty and department chairs, including Dr. Pohl herself, did not have the

20   same expectation.  No other college administrator (or physical therapy faculty) was expected

21   to report and justify any off-campus appointment/time.

22        20.    Plaintiff Ganley also learned from a colleague at another university that Dr.

23   Pohl discussed Plaintiff Ganley's private and confidential health and disability information

24   with a leader of a physical therapy program outside of NAU.

25        21.    NAU's former Department Chairs of the Physical Therapy department had not

26   denied support of prior sabbatical requests for eligible faculty members in over 30 years of

- 4 -

existence.  Yet, Dr. Pohl would not support Plaintiff Ganley's sabbatical requests for two consecutive years, even though Plaintiff Ganley had been eligible for a sabbatical for seven years.

22.    In February and March 2020, Dr. Pohl presented inaccurate and false complaints/issues relating to Plaintiff Ganley's performance to Dean Ransdell as discussed above.  Due to Dr. Pohl's influence, Plaintiff Ganley was given the impression that her attempts to discuss or refute Dr. Pohl's accusations were not welcomed by Dean Ransdell.

23.    During this time, Plaintiff Ganley was made aware that Dr. Pohl provided a number of false, negative, and unsubstantiated reports about Plaintiff Ganley to Dean Ransdell starting in February 2020 and running into the spring about Mr. Ganley's job performance and conflict of interest as noted above.

24.    The continuous harassment by Dr. Pohl was extremely stressful and negatively affected Plaintiff Ganley's neurological disability and mental health.

25.    On May 5, 2020, Plaintiff Ganley began protected FMLA medical leave and short term disability ("STD") due to an impending surgery.

26.    Approximately one week into her FMLA leave, on May 13, 2020, Dean Lynda Ransdell informed Plaintiff Ganley that she would no longer serve as the Associate Dean as of June 3, 2020.

27.    Plaintiff Ganley was demoted and would be required to go from a 12-month to a 9-month contract and experienced a substantial pay-cut.

28.    Plaintiff Ganley was told her position was eliminated as a cost-saving measure during COVID, yet documentation demonstrates there were no other demotions, pay-cuts, or job losses. Although the university's COVID-related expenses were reimbursed Plaintiff Ganley would still not return to that position. A new position of Assistant Dean was created; yet the posted job description is very similar to the Associate Dean position that was eliminated.

- 5 -

29.     Also, in the latter part of the fall semester in 2020, Dr. Amit Kumar informed Plaintiff Ganley that he and other faculty asked Dr. Pohl if Plaintiff Ganley would be returning to teach the following semester.

30.     Dr. Pohl untruthfully stated that Dr. Pohl and the Program Director had attempted to reach out to Plaintiff Ganley multiple times to find out that information and that Plaintiff Ganley did not respond.

31.     Plaintiff Ganley did not receive any phone call, personal or professional email communications from Dr. Pohl and/or the Program Director about her returning to teach.

32.     Dr. Pohl's disparaging comments to Plaintiff Ganley's colleagues interfered with Plaintiff Ganley's ability to successfully return to a leadership position in the Department.

33.     Due to exacerbation of her symptoms, which were caused by increased stress from the actions of Dr. Pohl and Ransdell, Plaintiff Ganley's Disability (STD and LTD) Leave was extended, and her return-to-work date ran through the spring semester of 2021.

34.     In early August 2021, prior to the start of the academic year, Plaintiff Ganley received a letter from NAU's Office of Equity and Access ("OEA") providing Plaintiff Ganley with personal information about her options relating to return to work and/or leave status.

35.     Within about one week of receiving OEA's August 2021 letter, Plaintiff Ganley learned that her personal health and/or leave status information continued to be inappropriately shared with NAU's faculty and staff.

36.     During Dr. Meghan Warren's early August 2021 interview with the search committee, search committee member, Dr. Valerie Carter, Clinical Professor of Physical Therapy and Athletic Training, asked Dr. Warren if it was true that Plaintiff Ganley would be fired if she did not return to work for the fall semester, which was personal information

provided in Plaintiff Ganley's OEA's letter as an option.   Dr. Carter works under the supervision of Dr. Pohl.

37.    Besides Plaintiff Ganley, only four individuals including Dr. Pohl, Todd Steen (OEA), Vickie Adney (HR), and Roger Bounds (Interim Dean, College of Health and Human Services) had access to the personal information in the August 2021 OEA letter to Plaintiff Ganley.

38.    Plaintiff Ganley inquired about why her personal information was inappropriately being shared. Mr. Steen and Ms. Adney denied sharing the information, and neither Dr. Bounds nor Dr. Pohl responded to Plaintiff Ganley.  Given that Dr. Carter works under the supervision of Dr. Pohl, Plaintiff Ganley believes that more than likely Dr. Pohl shared Plaintiff Ganley's personal information with Dr. Carter either directly or indirectly.

39.    Dr. Pohl's continued harassment and discrimination and false accusations against Plaintiff Ganley caused Plaintiff Ganley great stress resulting in debilitating depression and anxiety, requiring Plaintiff Ganley to seek medical health care, and also factored into Plaintiff Ganley declining certain treatments that could make her very tired and cause her to be away from work due to the fear that Plaintiff Ganley would be further discriminated against.

**COUNT ONE**

**VIOLATION OF THE REHABILITATION ACT**

40.    By reference hereto, Plaintiff hereby incorporates all prior paragraphs as if fully alleged herein.

41.    At all times relevant hereto, Defendant ABOR has been subject to the requirements of the Rehabilitation Act, as the ABOR and NAU receive and utilize federal funding.

42.     At all times relevant hereto, Plaintiff was an employee with a disability/impairment as defined under the Rehabilitation Act or she was regarded as a person with an impairment as defined by the statute and was able to perform her duties with an accommodation.

43.     Prior to 2016, when Plaintiff began to show outward signs of her disability, Plaintiff disclosing her disability to her supervisor, and Plaintiff requesting an accommodation, Plaintiff had not been subjected to harassment and criticism from her then supervisor.

44.     However, following the disclosure, Plaintiff was subjected to harassment and differing treatment when compared to similarly situated non-disabled colleagues as set forth above.

45.     Subsequently, based on the acts of her supervisor (current and former), Plaintiff was removed/demoted from her position as Associate Dean.

46.     The reason for the removal of Plaintiff was merely a pretext.

47.     Consequently, Plaintiff was discriminated against and harassed due to her disability and for asserting her rights under the Rehabilitation Act.

48.     Defendant's actions were a willful violation of Section 504 of the Rehabilitation Act.

49.     As a direct and proximate result of Defendant's intentional discrimination, Plaintiff has sustained economic damages in the form of loss of wages and the value of job benefits in an amount to be proven at trial.

50.     In addition, Defendant's actions have caused, continue to cause, and will cause Plaintiff to suffer damages for emotional distress, mental anguish, loss of enjoyment of life, damage to her reputation due to her demotion/removal, and other non-pecuniary losses all in an amount to be proven at trial.

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1. For General and Special damages to be proven at trial;

2. For compensatory damages relating to emotional distress as proven at trial;

3. For reasonable attorneys' fees and costs; and

4. For such other relief, the Court deems appropriate.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff hereby demands a jury trial.

DATED this 28th day of January, 2022.

**SCHLEIER LAW OFFICES, P.C.**

/s/ Bradley H. Schleier
Bradley H. Schleier
Brad@SchleierLaw.com
4600 East Shea Blvd, Suite 208
Phoenix, Arizona 85028
*Attorneys for Plaintiff Kathleen Ganley*